# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PHILIP CHARVAT and ANDREW PERRONG, on behalf of themselves and others similarly situated, | : : : : |
| Plaintiffs, | : : |
| v. | : Case No. 1:18-cv-2310 : |
| SANTANNA NATURAL GAS CORPORATION dba SANTANNA ENERGY SERVICES, JOHN DOE CORPORATION I dba THE ENERGY COMPANY, and JOHN DOE CORPORATION II | : : : : : : : |
| Defendants. | : |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiffs Philip Charvat ("Mr. Charvat") and Andrew Perrong ("Mr. Perrong") (collectively referred to as the "Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368 (2012).

2. John Doe Corporation I dba The Energy Company ("John Doe I") initiated a pre-recorded telemarketing call to the residential telephone number of Mr. Charvat to promote Santanna Natural Gas Corporation dba Santanna Energy Services ("Santanna") in violation of the TCPA. Santanna hired John Doe I to originate new customers and is vicariously liable for its illegal telemarketing conduct.

3. John Doe Corporation II ("John Doe II") initiated an automated call to Mr. Perrong's VoIP telephone line, for which he is charged for the call, to promote Santanna in violation of the TCPA. Santanna hired John Doe II to originate new customers and is vicariously liable for its illegal telemarketing conduct.

4. The Plaintiffs never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

5. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff Philip Charvat is a resident of the state of Ohio.

7. Plaintiff Andrew Perrong is a resident of the state of Pennsylvania.

8. John Doe Corporation I dba The Energy Company is a vendor of Santanna that identified itself as "The Energy Company."

9. John Doe Corporation II is a vendor of Santanna that didn't further identify itself.

10. Defendant Santanna Natural Gas Corporation dba Santanna Energy Services is a Texas corporation that has its principal office at 425 Quadrangle Dr., Bolingbrook, Illinois.

## Jurisdiction & Venue

11. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendant Santanna Natural Gas Corporation is a resident of this district, which is where the illegal telemarketing calls that are the subject of this putative class action lawsuit were commissioned.

**TCPA Background**

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Pre-Recorded and Automated Telemarketing Calls

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." *See* 47 U.S.C. § 227(b)(1)(B).

15. The TCPA also prohibits using "an automatic telephone dialing system (ATDS) to call [a phone line] … for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

18. The TCPA provides a private cause of action to persons who receive such calls.

### Factual Allegations

Call to Mr. Charvat

19. Mr. Charvat's home telephone number, (614) 895-XXXX, has been on the National Do Not Call Registry for years prior to the receipt of the call at issue.

20. Mr. Charvat has never removed his residential telephone number from the National Do Not Call Registry.

21. On January 17, 2018, Mr. Charvat received a pre-recorded telemarketing call from John Doe I that stated that "your utility company" informed it that the call recipients could save money on their energy bill.

22. Upon information and belief, John Doe I never contacted the Plaintiff's energy company.

4

23. Instead, this recorded message was misleading and designed to entice individuals to hear more information.

24. In order to confirm the identity of the calling party, Mr. Charvat listened to the telemarketing pitch after the pre-recorded message and confirmed that Santanna was the party whose services were being promoted.

25. The telemarketing representative that spoke to Mr. Charvat claimed to be "The Energy Company."

26. The telemarketing representative did not further identify his company or mention any company whose services were being offered other than Santanna.

27. The purpose of the call was to generate sales for Santanna.

Call to Mr. Perrong

28. Mr. Perrong's VoIP telephone number, (215) 725-XXXX, is charged for each call that is made to that phone line.

29. Publicly available databases identify Mr. Perrong's number as belonging to a VoIP service.

30. On March 22, 2018, Mr. Perrong received a telemarketing call from John Doe II.

31. The Caller ID that identified the calling party was "spoofed" to make it appear like it was coming from Mr. Perrong's energy company, NRG.

32. When Mr. Perrong answered the call, there was no one else on the line.

33. In fact, prior to the call being connected to a live individual, Mr. Perrong heard a noise that indicated the call had been initiated by a machine or computer.

34. These facts, as well as the fact that this call was part of a nationwide telemarketing campaign, demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

35. When a live person finally arrived on the line, Mr. Perrong was read a scripted pitch about the potential to lower his energy rates.

36. In order to confirm the identity of the calling party, Mr. Perrong listened to the telemarketing pitch and confirmed that Santanna was the party whose services were being promoted after he was transferred to Santanna's third party verification service in order to attempt to complete the sale.

37. The telemarketing representative did not further identify his company.

38. The purpose of the call was to generate sales for Santanna.

39. Plaintiffs and all members of the class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiffs' telephone lines from legitimate communication.

40. Plaintiffs have not provided Defendants with their prior express written consent to place telemarketing calls to them.

41. In fact, prior to filing this lawsuit, the Plaintiffs wrote to Santanna asking it for the basis of its vendors' calls.

42. Santanna did not respond.

### Santanna's Liability for the Telemarketing Calls

43. Santanna is a "person," as defined by 47 U.S.C. § 153(39).

44.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

45.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

46.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, FCC 07-232, Declaratory Ruling, ¶ 10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

47.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Santanna may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network,* 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

48.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

7

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 (¶ 34).

49. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

50. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592 (¶ 46).

51. Santanna is legally responsible for ensuring that the company who made the calls complied with the TCPA, even if Santanna did not itself make the calls.

52. Santanna knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

53. In fact, Santanna accepted the business from illegal calls from the defendants, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

54. Furthermore, Santanna is currently facing a putative class action lawsuit related to telemarketing calls made by its third parties in alleged violation of federal telemarketing law.

55. Despite these facts, Santanna has continued to fail to monitor the third parties operating on its behalf.

56. By hiring a company to make calls on its behalf, Santanna "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

57. Moreover, Santanna maintained interim control over the actions of the party that made the call.

58. For example, Santanna had absolute control over whether, and under what circumstances, it would accept a customer.

59. Furthermore, Santanna had day-to-day control over the party that made the call's actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Santanna.

60. Additionally, Santanna restricted the geographic location that the company that made the calls could promote Santanna.

61. Santanna also gave interim instructions to the company that made the calls by providing the volume of calling and contracts it would purchase.

62. Moreover, Santanna instructed the third party to transfer the called parties over to a third-party verification company that Santanna had hired to complete the process of signing a customer up for their service.

63. In other words, Santanna allows its vendors to bind Santanna in contract following an illegal telemarketing call, such as the ones the Plaintiffs received.

64. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

65. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

66. The classes of persons Plaintiffs propose to represent are tentatively defined as:

PRE-RECORD CLASS

All persons within the United States to whom: (a) Defendants, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) through the use of a prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

ATDS CALL CLASS

All persons within the United States to whom: (a) Defendants, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone number or one for which the called party is charged for the call; (c) through the use of the same or similar dialing system used to call Mr. Perrong; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

67. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

68. The classes as defined above are identifiable through phone records and phone number databases.

69. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

70. Plaintiffs are members of the classes.

71. There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

    a. Whether Santanna is liable for the conduct of their third-party vendor;

    b. Whether John Doe I made calls with a pre-recorded message;

    c. Whether John Doe II made calls with an ATDS;

    d. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

    e. Whether the Plaintiffs and the class members are entitled to statutory damages as a result of Defendants' actions.

72. Plaintiffs' claims are typical of the claims of class members.

73. Plaintiffs are adequate representatives of the classes because their interests do not conflict with the interests of the classes, they will fairly and adequately protect the interests of the classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

74. The actions of the Defendants are generally applicable to the classes as a whole and to Plaintiffs.

75. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

76. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

77. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA's Pre-Recorded Telemarketing Call Provisions

78. Plaintiff Charvat incorporates the allegations from all previous paragraphs as if fully set forth herein.

79. The Defendants violated the TCPA (a) by initiating telephone solicitations to Mr. Charvat's residential line using a pre-recorded message, or (b) by the fact that others made those calls on its behalf.

80. The Defendants' violations were negligent and/or knowing.

### Count Two:
### Violation of the TCPA's Automated Telemarketing Call Provisions

81. Plaintiff Perrong incorporates the allegations from all previous paragraphs as if fully set forth herein.

82. The Defendants violated the TCPA (a) by initiating telephone solicitations to Mr. Perrong's telephone line that charged him for the call, or (b) by the fact that others made those calls on its behalf.

83. The Defendants' violations were negligent and/or knowing.

**Relief Sought**

For themselves and all class members, Plaintiffs request the following relief:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendants;

B. Because of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each class member treble damages, as provided by statute, of up to $1,500 for every call that violated the TCPA;

C. Because of Defendants' statutory violations of 47 U.S.C. § 227(b), Plaintiffs seek for themselves and each class member $500 in statutory damages for every call that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiffs and the classes;

E. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the classes; and

F. Such other relief as the Court deems just and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Dated: March 30, 2018

PLAINTIFFS,
By their attorneys,

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com

Lauren E. Snyder (6293832)
1350 N. Wells Street, Apt. A214
Chicago, IL 60610
(419) 344-1146
lauren.elizabeth.snyder@gmail.com

Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com
ted@broderick-law.com
*Subject to Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*

14